# UNITED STATES DISTRICT COURT
for the
Central District of California

| | |
|---|---|
| In the Matter of the Search of <br> *(Briefly describe the property to be searched or identify the person by name and address)* <br><br> United States Postal Service Priority Mail Express parcel bearing tracking number EI040516680US | ) <br> ) <br> )  Case No. 8:22-MJ-00062 <br> ) <br> ) <br> ) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution and Possession with Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 843(b) | Unlawful Use of Communication Facility to Facilitate Distribution of a Controlled Substance |

The application is based on these facts:

*See attached Affidavit*

☒ Continued on the attached sheet.

_____
*Applicant's signature*

USPIS USPI Sumyra Duy
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

_____
*Judge's signature*

City and state: Santa Ana, California      DOUGLAS F. McCORMICK, U.S. MAGISTRATE JUDGE
*Printed name and title*

AUSA: Ann Luotto Wolf 213-393-8097

**AFFIDAVIT**

I, Sumyra Duy, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1. I am a United States Postal Inspector ("USPI") with the United States Postal Inspection Service ("USPIS") and have been so employed since May 2012. I am currently assigned to the Contraband Interdiction and Investigation - South Team of the Los Angeles Division, which is responsible for investigating drug trafficking violations involving the United States Mail to distribute controlled substances and/or controlled substances proceeds.

2. I have completed a twelve-week basic law enforcement training course in Potomac, Maryland, which included training in the investigation of narcotics trafficking via the United States Mail. Additionally, I have attended a 40-hour Los Angeles Police Department Peace Officer Standards and Training Certified Academy Narcotics School. Prior to becoming a USPI, I worked as a financial investigator. I hold a Bachelor of Arts degree from California State University, Fullerton in Sociology and a Master's of Advanced Study from University of California, Irvine in Criminology, Law and Society. As part of my law enforcement duties, I have conducted numerous parcel investigations that have resulted in the arrest of individuals who have received and distributed controlled substances, as well as the seizure of the controlled substances and/or the proceeds of the sales of controlled substances.

## II. PURPOSE OF AFFIDAVIT

3.  This affidavit is made in support of a search warrant for the SUBJECT PARCEL described below in paragraph 5 and Attachment A, for the items listed in paragraph 6 and Attachment B. Attachments A and B are incorporated herein by reference. The items to be seized constitute the fruits, instrumentalities, and evidence of violations of Title 21, United States Code, Sections 841(a)(1) (Possession with Intent to Distribute a Controlled Substance) and 843(b) (Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance).

4.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. PARCEL TO BE SEARCHED

5.  This affidavit is made in support of an application for a search warrant for the following United States Postal Service ("USPS") Priority Mail Express parcel (hereinafter referred to as the "SUBJECT PARCEL"):

a. SUBJECT PARCEL is a USPS Priority Mail Express parcel bearing tracking number EI 040 516 680 US. SUBJECT PARCEL is a white Tyvek mailing envelope weighing 1 pound, 5 ounces. SUBJECT PARCEL is addressed to "Mohammed Touray, 1211 Evergreen Ave., Bronx, NY 10472". The return address listed on SUBJECT PARCEL is "Jacqueline Le France, 4157 Via Marina, Marina Del Rey, CA 90292, 323-409-9007". SUBJECT PARCEL was paid with $56.00 postage and postmarked on January 11, 2022, in Venice, CA 90291.

### IV. ITEMS TO BE SEIZED

6. The items to be seized from the SUBJECT PARCEL constitute fruits, instrumentalities, and evidence of violations of Title 21, United States Code, Sections 841(a)(1) (Possession with Intent to Distribute a Controlled Substance) and 843(b) (Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance). The items to be seized are identified in Attachment B and are incorporated herein by reference.

### V. STATEMENT OF PROBABLE CAUSE

#### Background

7. As described in detail below, the SUBJECT PARCEL is an outbound parcel destined to the Bronx, New York, mailed from the Venice, California area. The SUBJECT PARCEL is believed to contain controlled substances or the proceeds from the trafficking of controlled substances based on, among other

things, a positive alert by a trained narcotics-detection canine.

8.  Based on my training and discussions with experienced Postal Inspectors, I know that Postal Inspectors have been conducting investigations of drug trafficking via USPS Express Mail and Priority Mail since the mid-1980s.  In particular, they began conducting organized interdictions of Express Mail and Priority Mail parcels suspected of containing controlled substances and proceeds from the sale of controlled substances in Los Angeles, California, in the early 1990s.  Along with conducting organized interdictions, Postal Inspectors also regularly examine and investigate Express Mail and Priority Mail parcels throughout the year.  During the 1990s, Postal Inspectors observed that the trend was for drug traffickers to send controlled substances and proceeds from the sale of controlled substances using boxes, with the proceeds in the form of cash.  Although Postal Inspectors still see the use of boxes for controlled substances and cash, there has been a gradual change over the years toward the current trend of smaller boxes, flat cardboard envelopes, and Tyvek envelopes, with proceeds from the sale of controlled substances converted to money orders.  By using money orders, drug traffickers are able to send large dollar amounts in compact form, using much smaller conveyances that lend a sense of legitimacy to the parcel.

9.  From my training, personal experience, and the collective experiences related to me by Postal Inspectors on my team who specialize in investigations relating to the mailing of

4

controlled substances and drug proceeds, I am aware that the greater Los Angeles area is a major source area for controlled substances.  As such, controlled substances are frequently transported from the greater Los Angeles area via the United States Mail, and the proceeds from the sale of the controlled substances are frequently returned to the greater Los Angeles area via the United States Mail.  These proceeds are generally in large amounts of money over $1,000.

    10.  I also know based on my training and experience that drug traffickers will often use one of two USPS services: Priority Mail Express Service, which is the overnight/next day delivery mail service, and Priority Mail Service, which is the two-to-three-day delivery mail service.  Drug traffickers use Priority Mail Express delivery services because of their speed, reliability, and the ability to track the package's progress to the intended delivery point.  Drug traffickers often use Priority Mail delivery services because they allow drug traffickers more time for travel between states if they are following their shipments to their destinations for distribution.  Like Priority Mail Express, Priority Mail also allows drug traffickers to track the package's progress to the intended delivery point.

    11.  Based on information derived and built upon over many years, I, like other Postal Inspectors, initially look for certain characteristics when examining Priority Mail Express and Priority Mail for controlled substances or drug proceeds.  These characteristics include:

5

   a. The article is contained in a box, flat cardboard mailer, or Tyvek envelope;

   b. The article bears a handwritten label; and/or

   c. The handwritten label on the article does not contain a business account number.

 12. Parcels found to meet these characteristics are scrutinized by Postal Inspectors through further investigation, which may include return and addressee address verifications and trained narcotics-detecting canine examination.  Postal Inspectors will also look for additional drug or drug proceed parcel characteristics such as:

   a. The seams of the article are all taped or glued shut;

   b. The article emits the odor of a cleaning agent, adhesive, or spray foam detectable by a human; and/or

   c. Multiple articles are mailed by the same individual, on the same day, from different locations.

 13. Based on my training and experiences and information learned during discussions with other Postal Inspectors, I know that drug traffickers often use fictitious or incomplete names and/or addresses in an effort to conceal their identity from law enforcement.  Indeed, it is my experience that when real addresses are used, it is only to lend a legitimate appearance to the parcel and is almost always paired with a false name.

### Investigation Regarding the SUBJECT PARCEL

 14. On January 11, 2022, Los Angeles County Sheriff's Department ("LASD") Detective Gerardo Lozano contacted me

6

regarding the SUBJECT PARCEL, which was mailed from a post office located at 313 Grand Blvd., Venice, California 90291 ("Venice Post Office").

  15. I learned the following information from LASD Detectives Lozano and Nicholas Graham:

    a. LASD Detectives from the Narcotics Bureau have an on-going investigation involving the interception of wire and electronic communications granted by Los Angeles County Superior Court Judge Larry P. Fidler (Wiretap No. 21-182 Extension 1) over Target Telephone number (657) 366-8808, used by Darrah CAPRARELLI.  An intercepted conversation between CAPRARELLI and telephone number (310) 469-4953, used by Norberto NAVARROS, indicated a suspected narcotics parcel was anticipated to be mailed.

    b. On January 11, 2022, at approximately 12:16 PM, CAPRARELLI placed an outgoing telephone call to NAVARROS at telephone number (310) 496-4953.  During the conversation, NAVARROS told CAPRARELLI he was meeting up with that person right now who has the money.  NAVARROS said after he meets up with him (person who has the money), NAVARROS would head to CAPRARELLI.  CAPRARELLI asked NAVARROS if he had any "coke." NAVARROS replied he has some right now and asked CAPRARELLI how much she needed.  CAPRARELLI said that she needed "two ounces." NAVARROS told CAPRARELLI that he thinks he has that.  CAPRARELLI informed NAVARROS that she has to ship "it" out by 2:30. NAVARROS asked if CAPRARELLI wanted him to take her the "coke" first and then pick up the money.  CAPRARELLI responded,

7

whatever gets her the "coke" the fastest so she could send out the package. NAVARROS asked CAPRARELLI where she was. CAPRARELLI replied that she was in Venice. (Based on previous monitoring of wire and electronic communications, the address 525 28th Street, Los Angeles, CA 90291 has been identified as a location associated to CAPRARELLI.) NAVARROS asked CAPRARELLI if she would be mad if he went to CAPRARELLI to give her the "coke" first, then got the money and brought it back. CAPRARELLI told NAVARROS as long as her rent gets paid. CAPRARELLI asked NAVARROS where he was. NAVARROS replied that he was in East LA. CAPRARELLI asked how long it would take for NAVARROS to get to Venice. NAVARROS responded that if he goes right now, 40 to 30 min. NAVARROS asked CAPRARELLI where she was taking the stuff to ship it and if she was going to the post office. CAPRARELLI replied, "Yeah." NAVARROS asked CAPRARELLI which one. CAPRARELLI responded, whichever one is quick. CAPRARELLI stated she has to have it vacuum sealed and packaged. NAVARROS told CAPRARELLI he was going to head over there, and asked CAPRARELLI to give NAVARROS a chance to pick up the money after he takes CAPRARELLI the "coke." CAPRARELLI said she has to get this "shit" packed up and she has a "3000 pound" to send to New York. (Investigators believe this is referencing a package of narcotics worth $3,000 U.S. currency.) NAVARROS asked CAPRARELLI why she wasn't getting more. (Investigators believe this is referring to more money for sending narcotics.) NAVARROS said, either way that's good. CAPRARELLI told NAVARROS that she is sure they are going for more. (Investigators

believe this is referring to packages of narcotics worth more money.)  CAPRARELLI stated the package was going to one person and he used to live in K-Town.  (Investigators believe this is referencing the New York customer who used to live in the Korea Town area of Los Angeles, CA.)  CAPRARELLI said he has a guy in San Diego who is sending him work for "3."  (Investigators believe this is referencing the New York customer who has a source of supply in San Diego, CA and sends him work, specifically, shipments of narcotics, for $3,000.)  CAPRARELLI told NAVARROS that this is just one person who she met. NAVARROS asked if CAPRARELLI met him when she was over there. CAPRARELLI replied, "Yeah."

      c.  Based on Detective Graham's training, experience, and knowledge of this investigation, he believes CAPRARELLI was shipping a parcel of narcotics to a customer in New York. CAPRARELLI obtained cocaine for the shipment from NAVARROS.

      d.  It is a common method of operation for person(s) involved in the trafficking of narcotics to talk in vague and/or coded language to thwart law enforcement's efforts.  Terms and/or words such as "coke" are used to describe narcotic types. Coke is common street vernacular for cocaine.  Terms and/or words such as "3000 pound" are used to discuss narcotic weights and proceeds.  Thus, this conversation referred to sending a $3,000, approximate one-pound, package to New York.

      e.  Persons operating within the narcotics trade have been instructed by those with years of experience in the narcotics subculture to speak in code to avoid detection by

...

anyone who overhears the conversation or the possibility of being electronically intercepted. Experienced narcotics traffickers will avoid the use of words such as drugs, cocaine, dope, narcotics, etc.

       f.   On January 11, 2022, California Multi-Jurisdictional Methamphetamine Enforcement Team ("Cal-MMET") investigators were requested to conduct surveillance at 525 28th Avenue, Los Angeles, CA 90291. Prior to the surveillance, Detective Graham provided investigators with a Los Angeles County Booking Photograph of CAPRARELLI under booking number 6109487.

       g.   At approximately 3:00 PM, Cal-MMET investigators saw CAPRARELLI exit the residence with a white parcel and enter a Silver 4-door Audi with Colorado License Plate DJD354. The vehicle and CAPRARELLI were surveilled to the Venice Post Office. CAPRARELLI got out of the car with a white parcel and entered the post office. Investigators followed her inside and saw her turn in a parcel for shipping. CAPRARELLI left the post office, got into her car, and was surveilled back to 525 28th Street, Los Angeles, CA 90291. CAPRARELLI got out of the Audi and went into the residence.

       h.   A few detectives remained at the Venice Post Office and contacted the Post Office Manager who secured the parcel.

16. On January 12, 2022, I responded to the Venice Post Office to review the SUBJECT PARCEL. I observed the SUBJECT

PARCEL exhibited some of the characteristics listed in paragraphs 11 and 12, such as:

      a.   The parcel was in Tyvek envelope mailer;

      b.   The parcel bore a hand-written mailing label; and

      c.   The parcel did not contain a business account number;

17.   On January 12, 2022, I transported to, and secured the parcel at, the USPIS office in the City of Industry, California, pending a search of its contents pursuant to obtaining a federal search warrant.

18.   On January 12, 2022, I used CLEAR[1] to search the SUBJECT PARCEL'S listed sender's information. I learned the name "Jacqueline Le France" was not associated with the listed address "4157 Via Marina, Marina Del Rey, CA 90292".

19.   I also searched the listed recipient's information and learned the name "Mohammed Touray" last associated to the listed address "1211 Evergreen Ave., Bronx, NY 10472" on February 28, 2018.

### Positive Canine Alert on the SUBJECT PARCEL

20.   On January 12, 2022, LASD Canine Handler Detective Jeremy Draper and his narcotics-detection canine "Maya" conducted an exterior examination of the SUBJECT PARCEL. Detective Draper informed Detective Graham that Maya gave a positive alert to the SUBJECT PARCEL, indicating the presence of

---

[1] CLEAR is a public information database used by law enforcement that provides names, addresses, telephone numbers, and other identifying information.

11

controlled substances or other items that emitted the odor of controlled substances.

21. Attached hereto as Exhibit 1, which I incorporate fully herein by reference, are documents setting forth information provided by Detective Graham regarding Maya's training and history in detecting controlled substances, and investigation of the SUBJECT PARCEL.

## VI. CONCLUSION

22. Based on the above, I believe there is probable cause to believe the SUBJECT PARCEL described in Attachment A contains evidence of violations of Title 21, United States Code, Sections 841(a)(1) (Possession with Intent to Distribute a Controlled Substance) and 843(b) (Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this ____ day of
January 2022.

_____
HONORABLE DOUGLAS F. McCORMICK
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

<u>PARCEL TO BE SEARCHED</u>

SUBJECT PARCEL is a USPS Priority Mail Express parcel bearing tracking number EI 040 516 680 US.  SUBJECT PARCEL is a white Tyvek mailing envelope weighing 1 pound, 5 ounces. SUBJECT PARCEL is addressed to "Mohammed Touray, 1211 Evergreen Ave., Bronx, NY 10472."  The return address listed on SUBJECT PARCEL is "Jacqueline Le France, 4157 Via Marina, Marina Del Rey, CA 90292, 323-409-9007."  SUBJECT PARCEL was paid with $56.00 postage and postmarked on January 11, 2022, in Venice, CA 90291.

SUBJECT PARCEL is currently in the custody of the USPIS in City of Industry, California.

## **ATTACHMENT B**

<u>ITEMS TO BE SEIZED</u>

The following are the items to be seized from the SUBJECT PARCEL, which constitute the fruits, instrumentalities, and evidence of violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance) and 843(b) (Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance):

a. Any controlled substances, including marijuana;

b. Currency, money orders, bank checks, or similar monetary instruments in aggregate quantities over $1,000; and

c. Any associated packaging.

# Exhibit 1

My name is Jeremy Draper and I am currently employed by the Los Angeles County Sheriff's Department. I have been employed by the Sheriff's Department as a Deputy Sheriff for approximately 16 years. I am currently assigned to the Detective Division as a Narcotics Investigator and Canine Handler, a position I have held since May, 2016.  In addition to my extensive Law Enforcement training and experiences, my training and experience as it relates to Police Service Canines includes the following:

- While assigned as a Canine Handler I have attended training classes with my canine partner. These classes consisted of 320 hours of training and passing a testing process which is required to graduate.
- I have certified with my canine partner Maya through the National Police Canine Association (NPCA) and California Narcotics Canine Association (CNCA).
- Between the months of October 2016 and December 2016, my canine partner and I were trained by the Los Angeles County Sheriff's Narcotics Canine Handler cadre in narcotic detection. During this initial training we completed over 320 hours of training and successfully completed the Los Angeles County Sheriff's Department Narcotic Detection Canine Course. During this course, Maya learned the odor of five illegal narcotic substances (Cocaine, Methamphetamine, Heroin, Marijuana and Opium) and learned to alert to them. In order to successfully complete this course Maya's ability to recognize and alert to these odors was tested and successfully proven hundreds of times. Additionally, Maya was tested to ensure that those five odors were the only odors she would alert to. Maya has never alerted to any odors other than the five narcotic substances she was trained in. Since our initial 320 hours of training, Maya and I have completed in excess of 600 additional hours of training and testing and we have completed over 300 searches together.
- Maya and I were certified on 09-13-21 by NPCA certifying officials Davoren (D-410) and Hanley (D-519) and on 03-17-21 by CNCA certifying official Eric Oden.
- During our training, I routinely have Maya check uncirculated currency to insure that she is never alerting to the odor produced by currency. She has never alerted to uncirculated currency. Additionally, both during training and in deployments, I expose Maya to circulated currency. This is done intentionally with currency I possess or know about and unintentionally with money belonging to others we encounter during deployments.  Maya has never alerted to the currency I possess and has only alerted to other currency in situations where the currency is obviously related to and tainted with one of the illegal narcotic odors that she is trained to alert to.
- I have testified as an expert witness in issues related to narcotics use, sales and trafficking in State Court on several occasions.

On 01-12-22 at approximately 0920 hrs, Canine Maya and I responded to the US Post Office located at 313 Grand Bl, Venice, CA.  While at this location, I had Maya sniff a parcel (EI040516680US) which was on the ground in one of the large offices.  Maya alerted to the parcel and I notified the handling detective of this alert.

Detective Jeremy Draper #506551

Los Angeles County Sheriff Narcotics Bureau Canine Unit

11515 S. Colima Rd. Whittier, Ca 90604

562-505-9906